IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Chikez Onyewu  
6312 Langdon Lane  
Bowie, MD 20716  

    Plaintiff,

v.

Kaiser Foundation Health Plan of the  
Mid-Atlantic States, Inc.  
700 2nd Street, NE  
Washington, DC 20002  

Serve: Prentice-Hall Corporation  
       System, Inc.  
       1090 Vermont Avenue, NW  
       Washington, DC 20005  

    Defendant.

Case No.

JURY TRIAL DEMANDED

## COMPLAINT

COMES NOW, Chikez Onyewu ("Plaintiff"), by counsel, and complains of Defendant as follows:

### JURISDICTION AND VENUE

1. This action is brought pursuant to the Family and Medical Leave Act of 1993, 29 CFR § 825.100 et seq. This Court has federal question jurisdiction and venue is proper because Plaintiff was formerly employed by Defendant in Washington, D.C.

### THE PARTIES

2. Plaintiff resides at 6312 Langdon Lane, Bowie, MD 20716.

3. On information and belief, Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. ("Defendant"), is a foreign corporation doing ongoing business and registered in the District of

1

Columbia. Its resident agent is Prentice-Hall Corporation System, Inc., located at 1090 Vermont Avenue, NW, Washington, DC 20005.

4. At all times relevant to this lawsuit, Defendant employed Plaintiff at its location at 700 2nd Street, NE, Washington, DC 20002.

## FACTS

5. Defendant formerly employed Plaintiff as a Pharmacy Technician from in or around 1995 to 2012 and his job performance was always satisfactory.

6. In or around 2007, Plaintiff was diagnosed with chronic venous insufficiency, a medical condition that causes swelling and pain in a person's lower legs and ankles.

7. Chronic venous insufficiency is a disability that substantially limits one or more of Plaintiff's major life activities including walking and standing and is a considered a "serious health condition" for purposes of the Family and Medical Leave Act ("FMLA").

8. Defendant employs at least 50 employees and Plaintiff was eligible to use medical leave under FMLA because he had worked for Defendant for at least one year and for at least 1250 hours in the preceding year.

9. Plaintiff's job required him to stand for long periods every day but he was able to perform the essential functions of his position with reasonable accommodations.

10. Shortly after Plaintiff's diagnosis, Plaintiff disclosed his disability to his supervisor, Cindy Adams, and requested reasonable accommodations (frequent breaks to rest, elevate his legs).

11. Ms. Adams failed to engage in an interactive dialogue with Plaintiff regarding possible accommodations for his disability and directed him to manage his condition without taking multiple breaks throughout the workday.

12. Defendant required Plaintiff to forego frequent daily breaks which exacerbated his disability and

it required Plaintiff to request FMLA leave approximately one-week in advance if and when he needed medical leave to recover from the pain associated with Defendant's failure to provide Plaintiff with reasonable accommodations.

13. In or around 2009, Creighton Morehead and Steven Adamczyk became Plaintiff's supervisors.

14. Shortly thereafter, Mr. Morehead falsely accused Plaintiff of misusing his FMLA leave and required Plaintiff to undergo a re-evaluation of his condition in order to retain his FMLA leave entitlement.

15. Under the FMLA, persons suffering from chronic conditions must undergo a re-evaluation of their condition on a yearly basis. Mr. Morehead's requirement that Plaintiff be re-evaluated was unnecessary and discriminatory, as Plaintiff had already undergone a re-evaluation of his condition and submitted the appropriate documentation just three months prior.

16. Additionally, Mr. Morehead required Plaintiff to use vacation time instead of FMLA leave for his illness-related time off.

17. After the re-evaluation was completed, Plaintiff's diagnosis of chronic venous insufficiency was substantiated.

18. Shortly thereafter, Defendant informed Plaintiff that he was no longer permitted to provide advance notice of his symptoms to request FMLA leave. Instead, Plaintiff was directed to only take leave when absolutely necessary and to only request leave on the day he intended to take it.

19. In or around 2010, Plaintiff's disability worsened and he experienced sharp pains shooting through his legs to his feet. Plaintiff returned to the doctor for another evaluation and treatment and was informed his initial diagnosis of chronic venous insufficiency was incorrect, and he was diagnosed with lymphedema, another chronic condition.

20. Lymphedema is also a permanent disability that substantially limits one or more of Plaintiff's

major life activities including walking and standing and is a considered a "serious health condition" for purposes of FMLA.

21. On or about February 2012, Plaintiff complained to Human Resources that Mr. Adamczyk was miscoding his leave. Specifically, Plaintiff reported that he was being charged with sick leave and banked sick leave at the same time and that Mr. Adamczyk had coded Plaintiff's FMLA leave as vacation time. These mistakes were later corrected.

22. Plaintiff requested personal leave to attend a union hearing during his daytime work shift scheduled for April 17, 2012. Later, Plaintiff decided to take FMLA leave instead of personal leave and scheduled a physical therapy appointment. Plaintiff appropriately informed Defendant that he would be taking FMLA leave instead of personal leave.

23. On or about April 17, 2012, Plaintiff attended his physical therapy appointment which lasted approximately 5 hours. Plaintiff did not return to work after the appointment because his treatment provider informed him that he should avoid prolonged standing for the rest of the day.

24. Later that evening, Plaintiff attended the union.

25. On or about May 21, 2012, Defendant alleged that an unnamed manager observed Plaintiff stealing pediatric fleet enemas by giving the enemas to a customer without charging her. Plaintiff denies these accusations.

26. Mr. Morehead and Mr. Adamczyk conducted a compliance investigation regarding the theft accusation; however, on information and belief, Defendant's policies stipulate that it hire a third-party to conduct compliance investigations.

27. On information and belief, Defendant claims that, at or about the same time as Defendant initiated the compliance investigation for the theft accusation, an anonymous person called Defendant's tip line and claimed that Plaintiff misused his FMLA leave by attending a union

hearing on a day he took FMLA leave thereby using FMLA leave for personal activities.

28. On or about July 3, 2012, Mr. Morehead and Mr. Adamczyk interviewed Plaintiff and advised him of these accusations.

29. Plaintiff denies that he stole any products from defendant or improperly dispensed products to a customer without charging her.

30. During the July 3, 2012 interview, Mr. Morehead and Mr. Adamczyk did not give Plaintiff any detailed information regarding the alleged theft, which was purported to have taken place over 5 weeks before. Defendant did not inform Plaintiff who had made the accusation against him or tell him exactly what he was accused of doing. Defendant also did not give Plaintiff an opportunity to view or explain the video footage management claimed supported their accusation. Thus, Defendant did not provide Plaintiff a fair opportunity to defend himself against the false accusations before his termination.

31. Following the interview, Mr. Morehead and Mr. Adamczyk placed Plaintiff on administrative leave.

32. While Plaintiff was on administrative leave, Mr. Adamczyk sent two certified letters to Plaintiff, requesting that Plaintiff provide a letter by July 13, 2012 from his doctor showing he did go to physical therapy on April 17, 2012.

33. Plaintiff did not receive Mr. Adamczyk's letter until July 13, 2012, a Friday. Plaintiff attempted to contact Mr. Adamczyk, but he was not in the office. Plaintiff received the second certified letter on Saturday, July 14, 2012.

34. On July 16, 2012, the following Monday, Plaintiff again contacted Mr. Adamczyk. Plaintiff explained that he had not received the letters until July 13 and 14, 2012 and that his doctor was currently out of town, so Plaintiff requested an extension to respond. Mr. Adamczyk agreed to

an extension.

35. That same day, July 16, 2012, following their initial conversation, Mr. Adamczyk called Plaintiff back and told him not to worry about responding to the letter and to come in to the office the next morning, July 17, 2012.

36. On July 17, 2012, Plaintiff reported to the office, as directed. At that time, Mr. Morehead and Mr. Adamczyk informed Plaintiff that his employment was terminated.

37. The stated reasons for Plaintiff's employment termination were his alleged misuse of FMLA leave and the alleged theft. Plaintiff asked if he could return later that day to submit his doctor's note, which he was expecting to receive that day. Defendant denied Plaintiff's request.

38. Following the meeting, Plaintiff obtained a doctor's note verifying the physical therapy he had received on April 17, 2012 and the legitimacy of his FMLA leave.

39. Plaintiff attempted to deliver the letter to Mr. Morehead and Mr. Adamczyk but he was not permitted entry into the building so he delivered the letter to Human Resources. Defendant did not acknowledge receipt of Plaintiff's medical note.

40. Upon information and belief, Defendant's asserted reasons for terminating Plaintiff's employment were pretext for discrimination based on Plaintiff's use of FMLA leave.

41. Defendant's unlawful conduct was willful, malicious, wanton, and reckless.

42. Plaintiff sustained damages as a result of the unlawful conduct of Defendant.

43. At all times relevant, Mr. Morehead and Mr. Adamczyk was acting on behalf of and as agents of Defendant.

<u>COUNT 1</u>

44. Plaintiff repeats and realleges paragraphs 1-43 as if more fully set forth herein.

45. By and through its conduct, Defendant violated the Family and Medical Leave Act when it unlawfully retaliated against Plaintiff for taking medical leave by terminating his employment.

46. Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff demands judgment on Count 1 against Defendant, in an amount to be determined by a jury, but not less than $100,000 or as otherwise deemed appropriate by a jury, for lost wages, lost benefits, reinstatement, front pay, liquidated damages, costs, reasonable attorney's fees, the amount of taxes due on any award, and such other relief as the Court deems just and fair.

Date:   July 14, 2010

RESPECTFULLY SUBMITTED,

Alan Lescht & Associates, P.C.

By: _____

Alan Lescht, DC Bar # 441691
Rani Rolston, DC Bar # 974052
1050 17th St., NW, Suite 400
Washington, D.C. 20036
Tel (202) 463-6036
Fax (202) 463-6067
Alan.lescht@leschtlaw.com
Rani.rolston@leschtlaw.com
Attorneys for Plaintiff